# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

JOHN PELL, )
)
       Plaintiff, )
)
       v. )       Civil Action No. 09-10894-DJC
)
JOHN E. POTTER, )
POSTMASTER GENERAL and )
U.S. POSTAL SERVICE, )
)
       Defendants. )

---

## MEMORANDUM AND ORDER

CASPER, J.                                       March 1, 2011

## I.     Introduction

Plaintiff John Pell ("Pell") brings this disability discrimination claim under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, against defendants, John E. Potter, Postmaster General, and the U.S. Postal Service ("Defendants" or "USPS"). Defendants have moved to dismiss Pell's amended complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted because Pell failed to exhaust his administrative remedies and has failed to make a prima facie case of discrimination based on a disability. For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## II.     Procedural History

On May 29, 2009, Pell filed a complaint against Defendants alleging disability discrimination in violation of the American Disabilities Act ("ADA"), 42 U.S.C. §12101. On

December 23, 2009, after Defendants answered the complaint, Pell filed an amended complaint, alleging disability discrimination under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.,* but without alleging the ADA violation in his original complaint. Because this case involves a question of federal law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Defendants have now moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). This matter was transferred to this session on January 20, 2011 and the Court heard oral argument on February 23, 2011.

## III.    Factual Background

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept plaintiff's allegations in the complaint as true and construe them in the light most favorable to the plaintiff, although "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009). Because Pell is a pro se litigant, the court construes his complaint and other filings liberally. Estelle v. Gamble, 429 U.S. 97, 106 (1976). The following facts are based upon the allegations in Pell's amended complaint unless otherwise noted.

Pell is a former employee of the United States Postal Service ("USPS") who worked at the Framingham Post Office. In 2003, while employed as a supervisor at the USPS, Pell was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and a psychiatric condition called Transient Global Amnesia ("TGA"). After these initial diagnoses, he remained out of work until his doctors released him to return to work. Pell's doctors allowed him to return to work in 2005 on the condition that the USPS provide "strict enforcement" of USPS regulations and policies in Pell's work environment, specifically those regulations and policies that prohibited workplace threats, harassment, bullying,

intimidation and that contain a "zero tolerance" policy for unacceptable levels of workplace stress. Pell claims that he sought such "strict enforcement" as a "reasonable accommodation" [under the Rehabilitation Act] of his condition to enable him to perform the essential duties of his job. From the time he returned to work at some point in 2005 until September 5, 2006, Pell alleges the USPS strictly enforced USPS regulations and policies in his work environment and as a result he was able to perform all of the essential functions of his job.

However, on September 5, 2006, Framingham Postmaster William Harris ("Harris") approached Pell at the beginning of his shift, accused Pell of sexual harassment, and told him he had three choices: (1) accept a demotion; (2) transfer out of the Framingham Post Office; or (3) "I'll throw you out." Pell alleges that Harris' conduct towards him violated USPS regulations and policies against bullying, harassment, threats, and intimidation. As a result of Harris' conduct towards him, Pell suffered a TGA episode, left the workplace and has not returned to work since that day. He has since retired from the USPS.

Pell was unhappy with the USPS's handling of his complaint about the September 5, 2006 incident. Pell alleges that, in connection with a worker's compensation claim he filed when he was out of work, Harris completed two forms related to the September 5, 2006 incident that were inconsistent and incomplete. Pell also claims that Harris failed to investigate the September 5, 2006 incident fully because he did not interview Pell or other witnesses. Pell further alleges that he requested that Harris be investigated for violating USPS policies and regulations in connection with the September 5, 2006 incident, but that USPS District Manager John Powers chose not to do so. In early 2008, Pell reported Harris' violations of USPS policies and regulations to USPS Northeast Area Vice President Haney ("Haney"), but Haney refused to investigate Harris' conduct and refused

to refer the alleged violations to the Office of the Inspector General ("OIG").

### 1. Administrative Proceedings

Pell sought EEO counseling on March 31, 2008 - nearly a year and a half after the alleged September 5, 2006 incident of discrimination.[1] In contacting the EEO, Pell indicated that the date of the alleged discriminatory incident was March 4, 2008 - the date Pell became aware that Haney would not refer the alleged violations of USPS policies and regulations to OIG.

After receiving the EEO notice of right to file a formal complaint on June 23, 2008, Pell filed a complaint with the EEO on July 8, 2008. On July 28, 2008, the EEO dismissed Pell's complaint for two reasons: (1) failure to state a claim because the Department of Labor is the proper forum to address the basis of Pell's then pending worker's compensation claim; and (2) untimely EEO counselor contact because Pell failed to contact an EEO counselor within 45 days of the September 5, 2006 incident.

Pell then timely appealed the dismissal of his EEO complaint to the EEOC Office of Federal Operations ("OFO"). On December 23, 2008, the OFO dismissed his appeal. On February 27, 2009, the OFO denied Pell's request for reconsideration and informed him of his right to file a civil action within 90 days. On May 29, 2009, Pell filed this civil action.

---

[1] The summary of administrative proceedings is based on Defendants' motion to dismiss and the relevant EEO documents attached and incorporated thereto. The court's consideration of documents outside the pleadings does not convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment, see Fed. R. Civ. P. 12(d), where, as here, the documents are "central to" the plaintiff's claim. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Here, the issue of whether Pell has exhausted administrative remedies is central to his claim. See Misra v. Smithsonian Astrophysical Observatory, 96 F. Supp. 2d 29, 30-31 (D. Mass. 2000), aff'd, 248 F.3d 37 (1st Cir. 2001); see, e.g., Glass v. Clarian Health Partners, Inc., No. 1:05-cv-0583 JDT, 2005 WL 2476129, at *3 (S.D. Ind. Oct. 6, 2005) (considering plaintiff's EEOC charge and right-to-sue notice with regard to dates of filing/issuance only, because exhaustion issue was disputed in the Title VII case and, therefore, these documents were "central to" the plaintiff's claim).

## IV.     Legal Analysis

To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim to relief that is both actionable as a matter of law and "'plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotations omitted).

### A.     Failure to Exhaust Administrative Remedies

The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity . . . conducted by . . . the United States Postal Service." 29 U.S.C. § 794. The Act, specifically 29 U.S.C. § 791 and 794(a), incorporate the procedures of Title VII, including exhaustion of administrative remedies. Roman-Martinez v. Runyon, 100 F.3d 213, 216 (1st Cir. 1996); Nunnally v. MacCausland, 996 F.2d 1, 2 (1st Cir. 1993); Connolly v. United States Postal Service, 579 F.Supp. 305, 307 (D. Mass. 1984).

Thus, an aggrieved federal employee alleging discrimination under the Rehabilitation Act must exhaust his administrative remedies before bringing suit in federal court. Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000). Exhausting administrative remedies includes complying with federal regulations governing the processing of complaints. Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990). 29 C.F.R. § 1614.105(a) provides:

> (a)    Aggrieved    persons    who    believe    they    have    been

discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

See Morales-Vallellanes v. Potter, 605 F.3d 27, 31 n.3 (1st Cir. 2010) (noting that "[t]he EEO complaint process provides an administrative forum for postal employees to resolve discrimination claim against the USPS" and requires the employee "to file a 'precomplaint' and consult with an EEO counselor"). A federal employee must contact an EEO counselor within 45 days of the "matter alleged to be discriminatory" or the "effective date" of the personnel action. 29 C.F.R. § 1614.105(a)(1). Failure to do so causes him to lose his right to pursue a later action in court. Roman-Martinez, 100 F.3d at 217; Burns v. Potter, 334 F. Supp. 2d 13, 18 (D. Mass. 2004); Misra, 96 F. Supp. at 30.

The First Circuit's decision in Roman-Martinez governs here. In that case, shortly after ceasing to work for the USPS in June 1990, the plaintiff complained administratively to the USPS that he had been discriminated against based on his disability. Roman-Martinez, 100 F.3d at 215. He contacted a USPS EEO counselor on September 24, 1990 and alleged two discriminatory actions that occurred during his employment and filed a complaint for discrimination. Id. The USPS rejected plaintiff's complaint on the ground, among others, that he failed to contact the EEO counselor within 30 days of the alleged discriminatory act. Id. On appeal to the EEOC, the EEOC reached the same conclusion. Id. at 215-16. The district court agreed with the USPS and the EEOC and held that plaintiff's failure to contact an EEO counselor within the required time period barred

him from bringing a civil action for discrimination based on his disability.  Id. at 217.  The First

Circuit agreed and rejected the plaintiff's contention that he had earlier brought his claim to the EEO

counselor's attention.  Id. at 219-20.

Reading the allegations in the Amended Complaint in the light most favorable to Pell, his

claim is likewise barred by the Rehabilitation Act's administrative exhaustion requirement.  Pell

alleges that Harris' conduct on September 5, 2006 amounted to discrimination based on Pell's

psychiatric disability and caused Pell to suffer a recurrence of his TGA, forcing him to leave the

workplace that very day.  Like the plaintiff in Roman-Martinez who was required to contact the EEO

counselor within 30 days of the alleged discriminatory actions, Pell was required to contact an EEO

counselor within 45 days of the September 5, 2006 incident.[2]  It is uncontested that Pell failed to

contact an EEO counselor within this required 45 day period and, therefore, his claim is barred for

failure to exhaust his administrative remedies.

Pell does not argue that Haney's March 4, 2008 denial of any further investigation of the

September 5, 2006 incident constituted a new discriminatory action and thus became the triggering

event for commencing EEO procedures nor would such argument be plausible on the basis of the

facts alleged in the Amended Complaint.  The Supreme Court has held, "the time for filing a charge

of employment discrimination with the [EEOC] begins when the discriminatory act occurs . . . . A

new violation does not occur, and a charging period does not commence, upon the occurrence of

subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination."

---

[2]The regulations that applied to the plaintiff's administrative complaint made in 1990 in
Roman-Martinez required contact with an EEO counselor within 30 days.  In the new regulations
that became effective in 1992, the period for contacting the EEO counselor was extended from
30 to 45 days.  29 C.F.R. § 1614.105(a)(1).

Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 628 (2007) (superceded on other grounds by Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5). "[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become the most painful." Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (internal quotation marks and emphasis omitted) (quoting Abramson v. University of Hawaii, 594 F.2d 202, 209 (9th Cir. 1979)); see Newman v. Johanns, No. 05-36-M-DVM, 2007 WL 3047141, at *2 (D. Mont. Oct. 16, 2007) (granting defendants' motion for summary judgment as to plaintiff's rehabilitation act claim in part for plaintiff's failure to exhaust his administrative remedies due to untimely contact with EEO counselor relying on Ledbetter, 550 U.S. at 627-28, and rejecting that the time period commenced when the alleged discriminatory act later affected plaintiff's worker's compensation claim or when plaintiff later discovered the alleged discriminatory motive behind the act).

Even read in the light most favorable to Pell, March 4, 2008 was the date on which he learned that the USPS would not further investigate or refer his claim that the September 5, 2006 incident was discriminatory. That is, the September 5, 2006 allegedly discriminatory act triggered Pell's obligation to contact the EEO counselor, not the later March 4, 2008 date upon which Pell learned that the USPS rebuffed his efforts for further investigation of the 2006 incident. Accordingly, because Pell did not contact the EEO counselor within 45 days of the triggering discriminatory action on September 5, 2006, he failed to exhaust his administrative remedies.[3]

---

[3]Moreover, Pell also does not qualify for a waiver of the 45-day period under 29 C.F.R. § 1614.105(a)(2). The factual allegations in the Amended Complaint do not suggest that Pell was not notified or otherwise aware of the time limit for contacting an EEO counselor, that he was unaware of the alleged discriminatory incident in 2006 or that despite due diligence he was prevented from contacting an EEO counselor in a timely fashion. Moreover, in his 2009 request

Having ruled that this matter must be dismissed because of Pell's failure to exhaust administrative remedies, the Court need not reach Defendants' further argument that dismissal under Fed. R. Civ. P. 12(b)(6) is also warranted because he has failed to establish a prima facie case of employment discrimination based on a disability.

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

for reconsideration of the OFO's dismissal of his appeal, Pell acknowledged that he "considered an EEO complaint in 2006."